STATE of Minnesota, Respondent,

v.

Richard RICHARDSON, Appellant.

No. C2–00–1817.

Court of Appeals of Minnesota.

Oct. 2, 2001.

Mike Hatch, Attorney General, Natalie E. Hudson, Assistant Attorney General, St. Paul, MN; and Lisa Nelson Borgen, Clay County Attorney, Clay County Courthouse, Moorhead, MN, (for respondent).

John M. Stuart, State Public Defender, Theodora Gaitas, Assistant Public Defender, Minneapolis, MN, (for appellant).

Considered and decided by HARTEN, Presiding Judge, WILLIS and PARKER, Judges.

## OPINION

PARKER, Judge *

Richard Richardson appeals his eight felony convictions and sentences for patterns of harassing conduct under Minn. Stat. § 609.749, subd. 5, claiming that (1) the statute on pattern of harassing conduct does not permit the state to bring multiple charges of pattern harassment using overlapping predicate acts, (2) the trial court erred in its jury instructions regarding the law on pattern of harassment, (3) the evidence was not sufficient to convict him of pattern harassment against Kenneth Gillette, (4) the statute on pattern of harassing conduct does not allow multiple convictions that are based on overlapping predicate acts, and (5) the trial court erred in imposing separate sentences for each of the eight pattern harassment convictions.

## FACTS

In August 1991, appellant Richard Richardson applied for public assistance in Clay County. Julie Gillette, a financial caseworker at that time, approved Richardson's application for food stamps and medical assistance, but denied his application for cash assistance because Richardson was unable to confirm his county residency. Richardson appeared pleasant at the time and Gillette treated him as she did any other client.

Over the next couple of months, Richardson wrote several scathing letters to the Clay County office. In the letters, Richardson called Gillette stupid and threatened to sue her and Dennis Lien (her supervisor at the time), to destroy her life, and to make sure she was imprisoned. Julie Gillette testified that the letters frightened her and subsequently caused

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

her to suffer panic attacks and to quit her job with the county. Ultimately, criminal charges were brought against Richardson. He pled guilty to attempting to coerce and was sentenced to 90 days in jail.

In January 1993, the Clay County social services office, and Julie Gillette and Dennis Lien at their homes, each received a frightening postcard with essentially the same message. One stated "Liens and Gillettes on list for Feb! ½ down ½ on finish of job. You know where!"

In December 1995, Dennis Lien, his wife Barbara, their two children, and Julie Gillette each received threatening postcards at their homes. The postcards addressed to the Lien children stated "Merry Xmas! I'll soon pay back what I owe your dad." The postcards addressed to Julie Gillette and Dennis and Barbara Lien threatened that Richardson would pay them back for the 100 days he lost as a result of being in prison. These threats caused fear in each of the households.

In October 1997, Christopher Lien received notice that Richardson's address had changed to Moorhead. In November 1997, Dennis Lien received a letter from AT & T requiring him to sign the paperwork for his request to change his telephone services. Dennis Lien testified that he had not filled out the change-of-service card, felt harassed by the correspondence, and believed that Richardson had filled it out but not signed it.

In April 1998, Julie Gillette and the four Liens each received a change-of-address postcard informing them that Richardson would be receiving mail in Fargo, North Dakota. Each postcard had written on it: "I was innocent last time! 100 days for a crime not committed," and was signed with Richardson's name.

On July 9, 1999, Dennis Lien received a threatening postcard at the Clay County social services office that referred to him receiving "paybacks." On July 12, 1999, Barbara Lien received a similar postcard at home that threatened her and her family. The Lien family felt frightened for their lives.

On July 12, 1999, a postcard, addressed to Julie Gillette, was received at the Clay County office, although she no longer worked there, which threatened the lives of her and her family. On July 13, 1999, Julie Gillette received a postcard at her new home (forwarded from her old address) threatening "paybacks." Julie Gillette testified that she believed Richardson was threatening to kill, first, the Lien family and then her family. She testified that she and her family were frightened as a result of these postcards.

In August 1999, Julie and Kenneth Gillette received a postcard at their new home address, again threatening them with "paybacks for false arrest and jail time," and causing them to feel frightened. Dennis and Barbara Lien also received a postcard at their home in August threatening them and causing them to be fearful.

In June 2000, a jury found Richardson guilty of all eighteen counts in the complaint, which consisted of three counts of gross misdemeanor harassment, one count of felony aggravated harassment, six counts of terroristic threats, and eight counts of felony pattern of harassing conduct. The trial court vacated the six terroristic threat convictions as lesser-included offenses. The trial court then imposed concurrent sentences on the three gross misdemeanor harassment convictions, and concurrent sentences on each of the felony convictions (with a stay of execution on the pattern harassment conviction for count 18). Richardson now challenges the eight felony pattern harassment convictions.

## ISSUES

1. Does the statute on pattern of harassing conduct allow the state to bring multiple counts of pattern of harassing conduct charges using the same underlying criminal act as a predicate act for different counts of pattern harassment?

2. Did the trial court properly instruct the jury on the pattern of harassing conduct charges?

3. Was the evidence sufficient to sustain the conviction for pattern of harassing conduct against Kenneth Gillette?

4. Does the statute on pattern of harassing conduct allow convictions of multiple counts of pattern harassment that use the same underlying criminal act as a predicate act for different counts of pattern harassment?

5. Did the trial court err in imposing separate sentences for each of Richardson's eight convictions for pattern of harassing conduct?

## ANALYSIS

### I.

Richardson argues that Minn.Stat. § 609.749, subd. 5 (2000), does not allow the state to charge multiple pattern of harassing conduct offenses using the same occurrence of a criminal act as a predicate act for different pattern of harassment counts. In other words, Richardson contends that there can be no overlapping predicate acts to establish multiple counts of pattern harassment.

Statutory construction is a question of law, which this court reviews de novo. *State v. Azure,* 621 N.W.2d 721, 723 (Minn.2001). The purpose of interpreting statutes is to ascertain and effectuate the intent of the legislature. Minn.Stat. § 645.16 (2000). Every law shall be construed, if possible, to give meaning to all its provisions. *Id.* If a statute is unambiguous, the court examines only its plain language. *State v. Edwards,* 589 N.W.2d 807, 810 (Minn.App.1999), *review denied* (Minn. May 18, 1999). The fundamental rule is to "look first to the specific statutory language and be guided by its natural and most obvious meaning." *Id.* (quotation omitted). If, however, there is any doubt concerning the legislature's intent, the statute must be strictly construed in favor of the defendant. *State v. Olson,* 325 N.W.2d 13, 19 (Minn.1982).

Under Minn.Stat. § 609.749, subd. 5(b), a "pattern of harassing conduct" means "two or more acts within a five-year period that violate the provisions of" twelve specifically enumerated statutory offenses. This language indicates that a pattern harassment charge can be brought when two criminal acts occur. Nothing in this language, however, expressly limits the prosecutor's discretion in determining how to charge a defendant with pattern harassment when the defendant commits at least three of the underlying criminal acts within a five-year period. Nor does it expressly prohibit the prosecutor from overlapping a predicate act to charge a defendant with multiple counts of pattern harassment. Notably, in the absence of any limiting statutory language, we give deference to the prosecutor's discretion to evaluate the facts of a case, which may lead to various combinations of charges, and to select the particular charges best suited to achieve justice. *See State v. Hanson,* 285 N.W.2d 483, 485 (Minn.1979) (finding theft statute gives prosecutor discretion, as does the general criminal code, to either prosecute seriatim or to aggregate certain types of theft offenses). Consequently, we find no error here in the manner in which the state chose to charge Richardson with pattern harassment.

## II.

■ Richardson next argues that the trial court's jury instructions on the pattern of harassing conduct charges did not provide the jury with an accurate and complete definition of the underlying offenses required to form a pattern of harassing conduct offense or with the elements of those underlying offenses. Richardson seeks to have his eight convictions for pattern of harassing conduct reversed, contending that the trial court's omission was an error of fundamental law and was substantially prejudicial.

■ As a threshold matter, the state claims that, because Richardson failed to object to the jury instructions at trial,[1] appellant has waived his right to review or, at most, that this court review under a plain-error test. We agree that no objection was raised. In general, a defendant's failure to object to jury instructions before they are presented to the jury constitutes a waiver of the right to appeal. *State v. Cross*, 577 N.W.2d 721, 726 (Minn.1998). On review, this court may nonetheless review unobjected-to jury instructions "if the instructions contain plain error affecting substantial rights or an error of fundamental law." *Id.* If this court finds any error in the jury instructions, a new trial is not required if the error was harmless. *State v. Hare*, 575 N.W.2d 828, 833 (Minn.1998). On review, the trial court's jury instructions must be read as a whole, and if the instructions correctly state the law in a manner in which the jury could understand them, there is no reversible error. *Cross*, 577 N.W.2d at 726.

■ The trial court instructed the jury that, in order to find Richardson guilty of pattern harassment, the state must prove beyond a reasonable doubt all of the elements of the crime of pattern of harassing conduct. Following the standard jury instruction, 10 *Minnesota Practice*, CRIM-JIG 13.58 (1999), the trial court specifically instructed the jury on the elements of the pattern of harassing conduct offense:

First, the defendant engages in a pattern of harassing conduct. A pattern of harassing conduct means two or more criminal acts within a five-year period.

Second, the defendant engaged in this conduct with respect to each of the above-mentioned individuals.

Third, the defendant knew or had reason to know that each of the above-mentioned individuals would feel terrorized or fear bodily harm.

Fourth, each of the above-mentioned individuals felt terrorized or feared bodily harm as a result of the defendant's conduct.

And, fifth, that the defendant's act took place on or about April 28, 1998 with respect to Dennis Lien; on or about April 28, 1998 with respect to Barbara Lien; on or about July 12, 1999 with respect to Barbara Lien; on or about July 9, 1999 with respect to Dennis Lien; on or about July 12, 1999 with respect to Julie Gillette; on or about July 13, 1999 * * * with respect to Julie Gillette; on or about August 6, 1999 with respect to both Dennis and Barbara Lien; and on or about August 6, 1999 with respect to both Julie and Kenneth Gillette, all occurring within Clay County and the State of Minnesota.

Appellant contends that the trial court, in stating the first element of pattern of harassing conduct, committed an error in

---

1. We note that, although Richardson was a pro se defendant with standby counsel at trial, this does not affect our decision on review. *See State v. Worthy*, 583 N.W.2d 270, 276 (Minn.1998) (noting trial court's practice of holding pro se defendants to the same standard as licensed attorneys after defendants waived their right to counsel).

fundamental law by failing to articulate each element of the underlying "criminal act" listed within the statute and repeatedly committed by appellant to create the alleged pattern of harassment.

Appellant was separately charged with harassment and terroristic threats, which are included in the list of underlying criminal acts that can form a pattern of harassing conduct. *See* Minn.Stat. § 609.749, subd. 5(b). The trial court instructed the jury separately on these offenses, including all the statutory elements the state was required to prove beyond a reasonable doubt.

The pattern harassment statute does not require proof of convictions of the underlying criminal acts, although the jury here did convict appellant of harassment and terroristic threats. *State v. Schmitz,* 559 N.W.2d 701, 705 (Minn.App.1997), *review denied* (Minn. Apr. 15, 1997); *cf. Cross,* 577 N.W.2d at 727 (noting that domestic abuse murder statute did not require proof of pattern of domestic abuse convictions). It might have been helpful to the jury to repeat the elements of those underlying offenses when instructing on pattern harassment. *See* 10 *Minnesota Practice,* CRIMJIG 13.58, n. 1 (1999) (suggesting that trial court should instruct on elements of underlying crimes if necessary). But because the court outlined those elements in a separate section of the instructions, it was not necessary to do so.

In a recent case, the supreme court has held that it was error to fail to instruct the jury on all elements of the substantive crime of first-degree controlled substance offense that was the object of the conspiracy charged against the defendant. *State v. Kuhnau,* 622 N.W.2d 552, 558 (Minn.2001). But in *Kuhnau,* although the court read the statutory definition of the substantive crime in another part of the instructions, it never provided the jury with all essential elements of that offense. *Id.* at 557–58. Further, the court in *Kuhnau* found that the defendant had properly objected to the instruction and thus reviewed the challenge under an abuse of discretion standard. *Id.* at 555–56.

This court must view the jury instructions in their entirety. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). A complete reading of the elements of harassment and terroristic threats, although coming in a separate part of the instructions, was adequate to inform the jury of the elements of pattern harassment. Accordingly, it was not reversible error to fail to repeat those elements in instructing the jury on pattern harassment. *See generally State v. Cross,* 577 N.W.2d at 726–27 (assessing adequacy of jury instruction on "pattern of domestic abuse").

### III.

 Richardson also argues that the evidence is insufficient to support the conviction for the pattern of harassing conduct offense against Kenneth Gillette. Richardson contends that there was no evidence at trial of a pattern of harassing conduct, which requires two or more acts, towards Kenneth Gillette because only one postcard was specifically addressed to Kenneth Gillette, and therefore, only one harassing act occurred.

 In considering the sufficiency of the evidence, the reviewing court must view the evidence in the record in the light most favorable to the jury's verdict and must assume the jury believed the state's witnesses and disbelieved contrary evidence. *State v. Robinson,* 539 N.W.2d 231, 238 (Minn.1995). In so reviewing the evidence, this court must determine if the evidence was sufficient to allow the jury to reasonably conclude the defendant was guilty of the charges beyond a reasonable doubt. *Id.*

A conviction of pattern harassment requires proof beyond a reasonable doubt of all elements of the pattern harassment statute, including that defendant acted within the elements of the underlying offenses. *Schmitz,* 559 N.W.2d at 705.

There was evidence presented that numerous postcards were sent to the Gillette home. In addition to the postcard specifically addressed to Kenneth Gillette in August 1999, Julie Gillette received two threatening postcards in July 1999, each of which made her feel as if her family was in danger. Kenneth Gillette was aware of the contents of the July 1999 letters and testified that the threats frightened him. In this light, a jury could reasonably conclude that Richardson was guilty beyond a reasonable doubt of a pattern of harassing conduct against Kenneth Gillette. The record thus supports this conviction.

## IV.

Richardson further argues that five of the eight convictions of pattern of harassing conduct must be reversed, claiming that these five convictions were based on overlapping predicate acts. Richardson claims that, under the pattern harassment statute (Minn.Stat. § 609.749, subd. 5(b)), a single incident of criminal conduct could not be used repeatedly to support multiple convictions of pattern of harassing conduct. In other words, Richardson claims that the statute does not allow for overlapping predicate acts to sustain convictions.

As indicated earlier, we review the language of a statute de novo. *Azure,* 621 N.W.2d at 723. And, if there is any ambiguity in the language or the legislature's intent, we will strictly construe a penal statute in favor of the defendant. *Olson,* 325 N.W.2d at 19. The statute at issue here defines a "pattern of harassing con-

duct" to mean "two or more acts within a five-year period that violate the provisions of" twelve specifically enumerated offenses. Minn.Stat. § 609.749, subd. 5(b).

The language "two or more" acts is open to at least two interpretations. The statute implies that "two or more" acts in a five-year period can support either one conviction or multiple convictions if at least three criminal acts occur. Assuming three criminal acts, as listed in the statute, occur against a single individual in a five-year period, one interpretation is that the second criminal act cannot be used as a basis to convict a defendant of a second count of pattern harassment, based on the second and third criminal acts, because the defendant has already been convicted of a count of pattern harassment in which the second act has been used. Because the express language of the statute is silent as to the effect of using such overlapping predicate acts, another interpretation is that the statute does not prohibit a conviction of pattern harassment where the second criminal act has been used as the basis for a conviction on two separate counts of pattern of harassing conduct.

In light of the statute's ambiguity, we must strictly construe it in favor of Richardson. We conclude that the necessary inference is that a conviction of pattern harassment can stand only when at least two separate and discrete criminal acts against a single individual occur. This is not to say that a single predicate act committed against two individuals is limited to being used only as a basis for one conviction of pattern harassment. In such an instance, the single predicate act would not be overlapping when applied to each victim.

In this case, the jury could not have convicted Richardson of all eight felony counts of pattern harassment based on

separate and discrete criminal acts. The jury could have, at most, applied separate predicate acts to seven of the pattern harassment counts without "overlapping" criminal acts as to any single individual, in the following way:

*Dennis Lien*

Count 3 — December 1995 and April 28, 1998

Count 8 — November 1997 and July 9, 1999

*Barbara Lien*

Count 2 — December 1995 and April 28, 1998

*Count 10 — April 28, 1998 and July 12, 1999*-vacated

Count 16 — July 12, 1999 and August 6, 1999

*Julie Gillette*

Count 12 — December 1995 and July 12, 1999

Count 14 — April 28, 1998 and July 13, 1999

*Kenneth Gillette*

Count 18 — July 1999 and August 6, 1999

Thus, we hold that Richardson's count 10 conviction of pattern harassment against Barbara Lien contained an overlapping predicate act involving the July 12, 1999, incident and must be vacated. We therefore order that the conviction and sentence as to count 10 be vacated.

## V.

■■■ Finally, Richardson argues that receiving a sentence for each of his pattern of harassing conduct convictions violates the statutory prohibition against multiple punishments for the same conduct. "[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses * * *." Minn. Stat. § 609.035 (2000). Thus, if a defendant commits numerous crimes against the same person during a single behavioral incident, Minn.Stat. § 609.035 provides that the defendant may be sentenced for only one of those offenses. *State v. Bookwalter,* 541 N.W.2d 290, 293 (Minn.1995). In determining whether two convictions arose from a single behavioral incident, this court must examine the offenses to see whether they were motivated by a desire to obtain a single criminal objective. *State v. Soto,* 562 N.W.2d 299, 304 (Minn.1997). Additional factors that must be considered include determining "the unity of time and of place of the behavior." *Bookwalter,* 541 N.W.2d at 294 (quotation omitted). The determination of whether multiple offenses constitute a single behavioral act is not, however, a mechanical test, but requires an examination of all the facts and circumstances. *Soto,* 562 N.W.2d at 304.

In evaluating the facts and circumstances of this case, we find it distinguishable from the supreme court's decision in *State v. Schmidt,* 612 N.W.2d 871 (Minn. 2000). In *Schmidt,* the supreme court concluded that conduct occurring on the street in front of the alleged victims' home during the course of a single time period spanning one year, and where the alleged conduct was directed toward a single criminal objective of harassing the victims, constituted a single behavioral incident for sentencing purposes. *Id.* at 876.

■■■ In this case, there were multiple victims of the pattern of harassing conduct offense: Dennis Lien, Barbara Lien, Julie Gillette, and Kenneth Gillette. The fear that Richardson's conduct instilled in these individuals occurred between 1991 and 1999. The criminal acts leading to the current convictions and sentences occurred in December 1995, November 1997, April 1998, July 1999, and August 1999. We cannot say that Richardson's acts occurred in a single and continuous time period

where the pattern of his criminal conduct was broken and sporadic over almost four years. Neither can we determine that there was unity of place in Richardson's conduct, as there was in *Schmidt*. The four individuals received the threatening postcards at various locations: the Gillettes' two different homes, the Liens' home, and the county's social services office. Although in the broader sense Richardson may have had a single purpose of harassing his victims, he inflicted fear and stress upon them over a lengthy period of time. We do not think his actions can be considered one course of conduct for sentencing purposes for the seven pattern of harassing conduct convictions. We therefore reject his argument on multiple sentencing and remand only for the trial court to vacate the conviction and sentence as to count 10, and to recalculate the sentence on the other counts, if appropriate.

## DECISION

The state did not violate the pattern harassment statute by charging Richardson with multiple counts of pattern of harassing conduct using overlapping predicate acts. The trial court properly instructed the jury on the law of pattern of harassing conduct. The evidence is sufficient to sustain the conviction for pattern of harassing conduct against Kenneth Gillette. The evidence is sufficient to sustain seven felony pattern of harassing conduct convictions without applying the same underlying criminal act as a predicate act for the various counts of pattern harassment. We therefore remand for the trial court to vacate the conviction and sentence on count 10 because it is based on an overlapping predicate act. If that conviction affected any subsequent sentence, the district court has the authority to make required adjustments. The trial court did not err in imposing separate sentences for the pattern of harassing conduct convictions as separate behavioral incidents.

**Affirmed in part, reversed in part, and remanded.**